MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. W. M.
DAVIS.

Decided March 20, 1909.

**1.—Railways—Killing Stock—Farm Crossing.**

When a railway company fences its right of way and, at the request of the
owner of the land, places a gate in the fence for a farm crossing, it will not be
liable for killing stock entering upon the right of way and track through such
gate, unless negligence on its part is shown.

**2.—Same—Negligence—Gate in Right of Way Fence.**

Where the pleadings charged that the railway company was negligent in
that the fastenings to the gate placed in its right of way fence for a farm
crossing were defective, evidence that the chain for fastening the gate was
too short to reach the larger nail in the post but was .long enough to reach
another nail placed in the post to fasten the gate to, in the absence of any
proof that the latter nail was insufficent to hold the gate if the chain was
fastened to it, raised only a suspicion that the fastening was defective, and
it was error to submit such an issue to the jury.

**3.—Same.**

It is not the duty of a railway company to see that a gate placed in the
right of way fence at the request of the owner of the land for a farm crossing,
is kept closed.

Appeal from the County Court of Hunt County. Tried below be-
fore Hon. J. W. Manning.

*Coke, Miller & Coke, Jno. T. Craddock* and *B. McMahan,* for ap-
pellant.

*John A. Stone, Jr., William Pearson* and *T. D. Starnes,* for ap-
pellee.

BOOKHOUT, ASSOCIATE JUSTICE.—This was a suit by appellee to
recover of appellant the value of a mule claimed to have been killed
by a locomotive or train of the defendant at a point about one mile
north of Kingston in Hunt County, at or near a road crossing over
the defendant's railroad. It was alleged that defendant's railroad
track at said point was straight, and defendant's servants operating
its train saw, or by the exercise of ordinary care would have seen, the
said mule upon defendant's track in time to have checked the train
and prevented injury to the mule; that defendant's track or right of
way at the point where the mule was killed was unfenced, "in that the
gate in the fence of the right of way was in a bad state of repair, in
this, that said gate was without a latch or fastening of any kind, and
stood open, so cattle or stock running at large could enter upon said
right of way at will, and the said defendant negligently permitted said
gate to stand open and unlatched and to remain in a bad state of re-
pair as above set out, and that as a direct and proximate result of de-
fendant's negligence in the respects hereinabove set out, and through
the negligence of its agents and servants, plaintiff's mule was struck
and killed." Defendant answered by general demurrer, special excep-
tion, general denial, a special plea of contributory negligence wherein

it is alleged that defendant's railway track and right of way at the point where the mule was killed were fenced, and that plaintiff's mule entered upon the said right of way through a gate placed in the right-of-way fence for the accommodation, use and benefit of the owner of the premises and his tenants, and that said gate was left open by the owner of said farm or by his employes or tenants, or was left open by the plaintiff or those acting for him, and that the gate was provided with suitable and safe fastening, and it was not at the time of the accident open through any fault or negligence of defendant.

A trial resulted in a verdict and judgment for plaintiff in the sum of $210, to reverse which defendant perfected this appeal.

*Conclusions of fact.*—W. M. Davis was engaged in working the public roads of Hunt County. He, with the consent of the owner of the land, established his camp about a half mile north of Kingston on a place owned by Jesse Clark. The field in which he was camped contained a pool or tank of water. The plaintiff got in and out of the field in which he was camped by going south from his camp through a gate leading out of the enclosure into the public road. This public road runs east and west and extends from Celeste to Kingston. The railroad track and right of way runs through the farm of Jesse Clark from the northwest in a southeasterly direction, and is fenced. About seventy yards southeast of Davis' camp there is a gate in the west right-of-way fence. Appellee also used this gate in reaching the public road. There is also a gate in the east fence of the railroad right of way. These gates had been there for five or six years, and were put there by the railroad at the request of Jesse Clark, the owner of the farm. The gate in the right-of-way fence on the west side stood open part of the time and part of the time it was shut. There was a farm crossing over the railroad between these gates. The gate in the west right-of-way fence was swung to the south post and opened towards the right of way. It had a chain attached to it with baling wire with which the gate was to be fastened. The fastening consisted of two nails driven in the gate post, one a ten penny nail and the other much larger. The chain was not long enough to reach the larger nail, but was of sufficient length to reach the ten penny nail, to which it could be fastened. The plaintiff worked eight mules and at night they were tied to the feed wagon. On the night of October 27, 1907, one of his mules became untied and wandered through the gate in the west side of the right-of-way fence and upon the right of way and was killed by a locomotive or train going north. The next morning plaintiff found the mule lying on the west side of the right of way and about seventy-five yards north of the farm crossing, dead. He testified that it was lying twenty-five or thirty yards north from where it was struck. There is no testimony that appellant's operatives of the locomotive or train discovered the mule on the right of way before striking him. The mule was shown to be worth $210.

*Opinion.*—Appellant assigns as error the court's refusal to give its requested charge instructing a verdict for defendant. It is contended

that (1) the uncontroverted evidence shows that plaintiff's mule entered upon the defendant's right of way through a gate in the right-of-way fence which had been placed there by the defendant at the request of the owner of the premises for the convenience of the owner of the premises and his tenants and servants in passing between the lands and premises of the landowner which at that point lay on both sides of the defendant's right of way and track; (2) that the uncontroverted evidence shows that at the time of the accident plaintiff was a tenant, probably a tenant at will, of the owner of the premises, and that plaintiff at and before the time of the accident was using said gate for his own convenience, and was acquainted with its situation and condition; (3) that there was no evidence showing or tending to show that the gate through which plaintiff's mule entered, or the latch or fastening of the gate, was insufficient, out of repair or in bad condition, but, to the contrary, the evidence did show that the latch or fastening to the gate was the kind ordinarily used in that community, was sufficient, and was in good condition; (4) that the uncontradicted evidence shows that defendant's servants endeavored to keep the said gate closed, but that the landowner, his tenants, and plaintiff himself, voluntarily and habitually left the said gate open, and that plaintiff himself passed through the said gate the day before the mule was killed, and left the gate open; (5) that the uncontradicted evidence shows that the mule was killed during a dark night, and the evidence failed to show at what hour or by what train the mule was struck, and failed to show the defendant's servants operating the train saw the mule; and (6) that there is no evidence showing, or sufficient to raise, a presumption that defendant's servants operating the locomotive that struck the mule failed to exercise ordinary care, or that such servants of defendant by the use of ordinary care could or would have discovered plaintiff's mule on the right of way in danger in time to have avoided the killing of the mule. These contentions are fairly supported by the record.

The railway company, having fenced its track, could not be held liable for killing the mule unless the evidence showed negligence on its part. (Missouri, K. & T. Ry. Co. v. Hanacek, 93 Texas, 446; Missouri, K. & T. Ry. Co. v. Hanacek, 23 Texas Civ. App., 394.) The pleadings charged that the fastenings to the gate were defective, and that such defect constituted negligence. While the evidence showed that the chain for the fastening of the gate was too short to reach the larger nail in the post, it was long enough to reach the ten-penny nail, which had been driven in the post to fasten the gate to. There is no evidence that this nail was insufficient to hold the gate if the chain had been fastened to it. The evidence tending to show that the fastening was defective amounted to no more than a suspicion that it was defective.

Again, it seems there was no attempt by plaintiff or others using the gate to close the same. It is held that it is not the duty of the railway company in this character of crossing to see that the gates are kept closed. (Missouri, K. & T. Ry. v. Hanacek, 23 Texas Civ. App., 394.) Appellee testified that the gate was always standing open. The plaintiff used the gate, and George Smith, who lived east of the

railroad in a house belonging to the owner of the farm, also used it in taking his stock to water. The plaintiff testified he passed through the gate the day preceding the night on which the mule was killed and it was open. He did not attempt to close it.

It follows that the trial court erred in failing to instruct a verdict for defendant. The cause seems to have been fully developed, and the uncontradicted evidence failing to show negligence on the part of appellant it becomes our duty to render such judgment as should have been rendered by the trial court. (Patrick v. Smith, 90 Texas, 267; Henne & Meyer v. Moultrie, 97 Texas, 216; Bondies v. Ivey, 15 Texas Civ. App., 290; Houston & T. C. Ry. v. Hollingsworth, 29 Texas Civ. App., 306.)

The judgment is reversed and judgment here rendered for appellant.

*Reversed and rendered.*